Thank you, Your Honor. Pardon me. Good morning, Your Honors. Joshua Sox for Appellant Erik Dillard. Your Honor, we briefed three issues in our opening brief, but we're a lot shorter today. The ineffective assistance of counsel issue, we withdrew. After further discussion with the client, we determined that this is one of those normal cases where a 2255 would be the proper remedy, not the appeal. So we filed a notice that we're withdrawing that issue from direct appeal. As far as our initial argument in the brief about reasonable doubt, unless the court has questions about that, I'll just stand on the opening brief. I have nothing to add to what we said. I really want to talk today about the sentencing issues, particularly both of the sentencing issues in this case had to do with whether Mr. Dillard committed or suborned perjury so as to warrant a two-point enhancement for obstruction of justice under the guidelines. The district court found that there were two incidents that involved perjury and with respect, I think the court was wrong in both incidents. The first incident involved a statement that Mr. Dillard made in an affidavit submitted in support of his motion to the allegedly perjurious statement was that he said he had driven from a location at which there was a meeting, supposedly a drug-related meeting, that he had driven his red pickup truck from the meeting back to his place of business. The government's position and the government's agents who stopped him had evidence that, on the contrary, he had driven a blue mountaineer to a place where a drug deal took place. At any rate, the court concluded that the statement was untrue, that he made a false statement, and knowingly made a false statement, and for purposes of this argument, I'm not quarreling with the district judge on either of those findings. I will accept for purposes of argument that the statement was false. I will accept for purposes of argument that Mr. Dillard knew it was false, but in order to have perjury, the statement has to be material, and the reason the statement... Well, forgive me for a moment, but if the plies had been successful, they most certainly would have influenced the trial because, had the district court believed him, it could have concluded that the officers didn't have probable cause to detain him because he wasn't the person who went to the parking garage, and moreover, lies need not have been successful to be the source of perjury. It's enough that there's a reasonable probability that it could affect the outcome of the legal process or influence the decision of the court, and in Mr. Dillard's version of events, where someone else is driving the mountaineer in the case of business, and Neal ends up with the Chevrolet Suburban that is registered to Dillard's business. Your Honor, I think, if I understand your question correctly, we're dealing with two separate issues here. I agree with you that if Mr. Dillard had offered the testimony, I was not driving the mountaineer. That's the statement that he made in his affidavit on the motion to suppress. If he had offered that statement at trial, it would have been material. My position is it was not material on the motion to suppress because there was no allegation that the officers who stopped him knew that this was his contention, that he hadn't been driving it. We're looking at, on the motion to suppress now, at the trial it would be different, but on the motion to suppress, we're looking at did the officers have grounds for suspicion. Our Mr. Dillard had put an allegation in his affidavit that said I wasn't driving that mountaineer and the officers who stopped me knew I wasn't driving the mountaineer, then that claim would have been material to the motion to suppress. But if he said the statement was capable of influencing the district court's decision on the motion to suppress. With all respect, your honor, to me it looks, I can't understand why it is anything but surplusage. It might be relevant to trial, I don't see it on the motion. The issue is what the officers knew, but I'll go on very briefly just to say with respect to the testimony of Mr. Turner offered at trial, which was material. You know, the question is was it so clearly false and did it form the basis of perjury? There is, under all the evidence of the record, it is entirely possible that Mr. Turner actually did see somebody other than Mr. Dillard drive the mountaineer up to Mr. Dillard's shop. When Officer Katsionis, the first officer who arrived at the meal, who testified for the government, the informant, he said that he was on his way to Dillard's shop to meet him when he got a call from Michael King, who is supposedly the mastermind drug dealer, diverting him to someplace else to meet Mr. Dillard, to meet somebody at a gas station. Dillard made him there. It is entirely possible that what Mr. Turner saw was correct, that somebody brought the mountaineer to Dillard's shop and when it arrived, Dillard went out to meet Mr. Neal. In other words, Turner could have been telling the truth, even so Dillard could have been guilty. The jury's verdict does not foreclose the possibility that Turner was truthful. You know, on that sentencing, I could be wrong, of course, often am. Not as often as I am, Your Honor. No, no, but it seems to me that Dillard was fairly lucky on the sentencing. He was only found responsible for three grams of cocaine, despite evidence that he left the garage with 18 kilograms of cocaine and evidence that this was not his first drug deal. I mean, does he really want to take his chances with a new trial and sentencing? Well, as I say, we withdrew. We have a new sentencing issue in front of the court. We do not have a new trial issue in front of the court. The new trial issue was a matter of the ineffective assistance of counsel claim. We have withdrawn that claim. I agree, Your Honor, Mr. Dillard was fortunate in some of the rulings at sentencing, and if Your Honor were to study the record, I think Your Honor would realize why the sentencing judge did not want to make findings of a larger quantity involved, given some issues with the witness, Mr. Howard, who was ultimately the source of that information. I can tell you, and this is obviously not on the record, but Mr. Pajano and I have discussed this with Mr. Dillard, and Mr. Dillard has directed us to bring this issue before the court. Remind me what his sentence was. I'm sorry, Your Honor? Remind me what his sentence was. Sentence. How long?  Well, you don't know offhand. By the way, I don't want you to sit down before I tell you this. A very small part of paragraph six of the defendant's affidavit is missing from the short appendix. It's probably just a few words, but it would be good for us to have a complete version of that affidavit. Your Honor, if I know what Your Honor is talking about, there are maybe more than one page of the material that the trial attorney, Mr. Crow, prepared. They didn't copy. That's not our doing. That's the way they are in our copies. That's the way they are in the record. If I can find that an original or something we can work up, I will certainly try to make a complete copy for the court. I had the same problem. Don't worry about the sentence. They'll tell you how long. Go ahead. You're done. Your Honor, my red light is on. If there's anything else that I can answer at this point, I'll be happy to. Otherwise, I'll yield to counsel. Thank you, counsel. Thank you. And we'll hear now from Ms. Jenkins. Thank you. May it please the court, Lindsay Jenkins on behalf of the United States. Your Honor, just to answer your first question, Mr. Dillard's sentence was 60 months imprisonment. His guideline range was 78 to 97 months imprisonment based on three kilograms of cocaine. Briefly on the obstruction issue raised by counsel, as this court has noted as recently in the United States be cast, as to the statements in the affidavit about how Mr. Dillard left the Hyde Park residence, the question is whether or not the statements are capable of influencing the district court's decision. And certainly a statement that the defendant left in an entirely different vehicle and traveled to his business directly was capable of influencing the district court's decision as to whether there was probable cause for the agents to stop and detain him later that evening. The statement was intended to influence the district court. Otherwise, there would be no reason to include that level of specificity in the affidavit. His statement was not simply just that he was at the Hyde Park residence and he left. His statement was that he left in a particular vehicle that was a different color and a completely different make and model. You know, Dillard makes a very interesting argument that it is not true that one must either believe Turner or believe Neal. Dillard argues that it's not impossible that some other person used the Mountaineer during the several days that it was outside of the control of Neal and that Turner could have in fact seen someone other than Dillard in the vehicle. So what does the government make of that argument? Your Honor, the government's position as the district court found is that Turner's explanation or testimony specifically was implausible when considered in light of all the other facts and circumstances that the district court had at its disposal when making this determination about suborning perjury for on pages 275 to 277 was not just that the Mountaineer was parked outside of the business and that someone other than the defendant had been driving that vehicle. Mr. Turner's testimony was that someone other than the defendant arrived and parked the Mountaineer at that location and then left the area in the white Suburban. That was Mr. Turner's testimony. Mr. Neal conversely testified that during the entire wait over that Memorial Day weekend, he had exclusive control over the white Chevy Suburban that he had taken from the motorcycle shop owners. He had no access to his Mountaineer during that time and that on the evening of May 26th, late in the evening at the gas station, Mr. Dillard was the person who returned the Mountaineer. Not only that, so not only was Mr. Turner's testimony directly contradicted or at least in terms of the timing of who had what vehicle and when, the district court was also in a position to consider the recorded statements by the cooperating source Vincent Howard who both at the suppression hearing and at sentencing, the district court was reminded and had previously heard the recorded conversation between Mr. Howard and the agent in which Mr. Howard described that the defendant was the person driving the blue Mercury Mountaineer. That coupled with the surveillance testimony and all of this are elements or pieces that the district court explained it took into account when deciding that the enhancement was separately appropriate for this reason. The bottom line, at least from the government's perspective, is that Mr. Turner's testimony was simply implausible based on everything else that the district court had at its disposal to consider for this enhancement, including evidence that was not presented to the jury. Unless there are other questions... I apologize, Your Honor, I thought maybe you were going to ask a question. The government would... I'm thinking of them, I'm thinking of them, but I think that's... The government would ask that the defendant's conviction and sentence be affirmed. Thank you. Thank you, Ms. Jenkins. I'll give you three minutes. You had no rebuttal time left, but I will give you three minutes, sir, if you would like to use it. For purposes of the perjury question involving Mr. Turner, it doesn't matter whether Mr. Dillard drove the Mountaineer to the parking lot. That was the question that was at the motion to suppress. Somebody else, at some point that evening, delivered the Mountaineer to Y2K Performance, and then Mr. Dillard went and met Mr. Neal, who had the white Suburban. It would have been consistent with the trial testimony. That's the point that we're trying to get to. Thank you. Thank you, Mr. Sacks. We thank both Mr. Sacks and Ms. Jenkins for their fine presentations today, and we will proceed to the next case. This case will be taken under advisement.